## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY MARIE WAHLERT, | ) | CASE NO. 5:22-cv-1324 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the report and recommendation ("R&R") of Magistrate Judge James E. Grimes Jr., recommending that this Court affirm the decision by defendant Commissioner of Social Security (the "Commissioner") denying plaintiff Ashley Marie Wahlert's ("Wahlert") application for Disability Insurance Benefits ("DIB"). (Doc. No. 9.) Wahlert filed objections to the R&R (Doc. No. 10), and the Commissioner filed a response (Doc. No. 12). Upon *de novo* review of the applicable sections, and for the reasons set forth below, the Court overrules the objections, accepts the R&R, and dismisses the case.

### I.    BACKGROUND[1]

In November 2017, Wahlert filed an application for DIB and supplemental security income ("SSI") (the "first application"). (*See* Doc. No. 5 (Administrative Transcript), at 122.[2]) Her first application alleged a disability onset date of July 25, 2017. (*Id.*) Wahlert's first application was

---

[1] The R&R contains a more detailed recitation of the factual background in this case. (*See* Doc. No. 9.) This Court includes only the factual and procedural background deemed pertinent to Wahlert's objections to the R&R.

[2] To be consistent with the citations to the administrative transcript within the R&R and the parties' briefing, all page number references to the administrative transcript herein are to the bates numbers on the bottom right-hand corner. All other record citations are to the ECF-generated page numbers.

denied initially and upon reconsideration. (*Id.*) After a hearing, the application was denied by an Administrative Law Judge ("ALJ") on September 25, 2019. (*Id.* at 119.) On June 25, 2020, the Appeals Council denied Wahlert's request for review. (*Id.* at 139.)

On July 30, 2020, Wahlert filed a second application (the "second application"), seeking only DIB. (Doc. No. 5, at 248.) Initially, Wahlert alleged a disability onset date of July 25, 2017 (*id.* at 248), but later amended her disability onset date to September 26, 2019 (*see id.* at 99–100)—the day after the ALJ in her first application issued a denial of benefits. (*See id.* at 119.) Wahlert alleged disability due to multiple scoliosis ("MS"), fractured vertebrae, asthma, cognitive decline, heart palpitations, anxiety, anemia, and vision problems. (*Id.* at 282.)

Wahlert's second application was denied at the initial level (*id.* at 145–51) and upon reconsideration. (*Id.* at 152–59.) She then requested a hearing before an ALJ, which was held telephonically on May 13, 2021. (*Id.* at 85–118.) On July 6, 2021, the ALJ issued an unfavorable decision. (*Id.* at 65.) The ALJ found that Wahlert had the severe impairments of "relapsing remitting [MS] and obesity," but that these impairments did not meet or equal any listed impairment. (*Id.* at 71.) The ALJ further determined that Wahlert retained the residual functional capacity ("RFC") to perform sedentary work with some limitations. (*Id.* at 72.) Among those limitations was the requirement that Wahlert "should perform no commercial driving[.]" (*Id.* at 72–73.) Although the ALJ determined that Wahlert was unable to perform any past relevant work, she determined that there are "jobs that exist in significant numbers in the national economy that [Wahlert] can perform[.]" (*Id.* at 78.)

On June 9, 2022, the Appeals Council denied Wahlert's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–3.) Wahlert then filed the instant

case seeking review of the Commissioner's decision on her second application. (Doc. No. 1.) On May 15, 2023, the magistrate judge issued his R&R, recommending that the Commissioner's decision be affirmed because it applied the correct legal standards and was supported by substantial evidence. (Doc. No. 9.) Wahlert timely filed her objections to the R&R. (Doc. No. 10.)[3]

## II.   STANDARD OF REVIEW

This Court's review of the magistrate judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[ ]"); Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[ ]").

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854–55 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486

---

[3] The docket text accompanying the R&R stated that objections to the R&R were due on Memorial Day, May 29, 2023. (*See* 5/15/2023 Docket Text.) Briefing deadlines that fall on federal holidays are extended to the next business day, thus, Wahlert's May 30, 2023 filing was timely. *See* Fed. R. Civ. P. 6(a)(1).

F.3d 234, 241 (6th Cir. 2007)).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor need the reviewing court necessarily agree with the Commissioner's determination in order to affirm it. "Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854–55. This is true even if substantial evidence also supports the claimant's position. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").

Even when there is substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (further citations omitted)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–46 (6th Cir. 2004)).

## III.    DISCUSSION

Wahlert objects to the R&R on two grounds: (1) the ALJ failed to properly give Wahlert's second application a "fresh look" and there was "new and material evidence" which "warranted a different finding", and (2) the R&R incorrectly held that Wahlert's judicial challenge to the ALJ's treatment of her "fatigue, balance, and use of her upper extremities" was waived due to Wahlert's failure to raise the issue before the Appeals Council. The Court will consider each objection in turn.

### A. Providing Wahlert's Present Application a Fresh Look and Consideration of New Evidence

In her objections, Wahlert contends that the ALJ impermissibly "adopted the opinions of the State Agency reviewing physicians who adopted the RFC from the prior ALJ" which "casts a pall over the entire hearing as [p]laintiff faced an unwarranted presumption that the findings of the prior hearing were correct." (Doc. No. 10, at 2.) Wahlert claims her second application contained "new and material evidence which differed from the [previous] decision and warranted a different finding." (*Id*.)

When an applicant has previously applied for DIB for a different period of time than their present application, their earlier application does not preclude consideration of their current application. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). Although claim preclusion, *i.e.*, res judicata, can foreclosure consideration for repeat DIB applicants, this result is exceedingly rare. *See id*. at 933 (providing a hypothetical example of when res judicata would apply). For res judicata to apply, the successive litigation must be "of the very same claim." *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

The doctrine's strict requirements make its application ill-suited for the DIB context. As

the Sixth Circuit succinctly stated in *Earley*: "human health is rarely static." *See id*. at 933. As time

passes, old illnesses can fade away and new ailments may develop. And, even if an applicant

presents little to no evidence for a change in their medical condition, they are still entitled to apply

for DIB again, albeit with the caveat that their chances of a different outcome are low. *See id*. at

933–34. In short, so long as an applicant applies for benefits for a different period of time, their

application should "rarely, if ever" be precluded. *See id*; *see also, e.g.*, *Frary v.  Comm'r of Soc.

Sec.*, No. 4:22-cv-674, 2023 WL 2752250, *2 (N.D. Ohio Mar. 31, 2023) (remanding case where

the application was for a different period of time than a prior application, and the ALJ incorrectly

concluded that because the ALJ "[found] no change in the claimant's condition since the time of

the prior decision, [the ALJ was] bound to adopt the [RFC] finding from that opinion").

That said, the principles of res judicata (finality, efficiency, and consistent treatment of

similar cases) are still important considerations and are "honor[ed] . . . by [ALJs when they]

consider[] what an earlier judge found with respect to a later application and by considering that

earlier record." *See Earley*, 893 F.3d at 933. If the application is essentially the same, the

determination should also be the same. *See id*. ("[A]bsent new and additional evidence, the first

administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing

a second application.") *Earley* made clear that ALJs should consider any decisions related to prior

DIB applications "if for no other reason than to strive for consistent decision making." *Id*. at 934.

For these reasons, an ALJ's review and consideration of a previous ALJ's work is the mark of a

thorough and proper decision rationale, not an erroneous one. *See Greger v.  Comm'r of Soc. Sec.*,

No. 4:21-CV-2327, 2023 WL 414554, *5 (N.D. Ohio Jan. 26, 2023) ("*Earley* requires that the ALJ

give the case a 'fresh look,' and specifically instructs the ALJ that the prior ALJ's findings cannot

be ignored in reviewing the second application.").

Here, the ALJ applied the correct legal standard by reviewing and considering the prior decision related to Wahlert's first application without being bound to it. Early in the ALJ's decision rationale, she acknowledged Wahlert's first application but noted "new evidence pertaining to the unadjudicated period. Specifically, there was medical worsening due to a [MS] flare in September 2020." (Doc. No. 5, at 68–69.) Due to this new evidence, the ALJ did not apply res judicata to Wahlert's second application. Instead, the ALJ reviewed the new evidence while also considering evidence from Wahlert's first application. (*See generally* Doc. No. 5, at 65–84.)

Additionally, the ALJ's mention of *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997) is not fatal. (*See* Doc. No. 5, at 68.) Although the ALJ cited to *Drummond,* a Sixth Circuit case that was subsequently clarified and refined by *Earley*, both *Drummond* and *Earley* demand the same ALJ action in this case: giving Wahlert's second application a fresh look on account of the new and material evidence. *See Drummond*, 126 F.3d at 842 (stating that the social security commissioner could only reexamine previously determined issues if there was "new and material evidence"). The ALJ did just that. By providing this fresh look, the ALJ applied the correct legal standard and Wahlert's objection on this basis is overruled.

Turning to the evidence supporting the ALJ's decision rationale, there was substantial evidence to support her decision to deny Wahlert's second application. As required by *Earley*, the ALJ reviewed Wahlert's medical conditions for the time period prior to her second application (*i.e.*, 2010 through September 2019) and summarized it within her decision rationale. (*Id*. at 74.) Next, the ALJ described, in detail, Wahlert's subsequent medical developments from September 2019 through the hearing in May 2021. (*Id*. at 74–78.) This in-depth analysis covered medical

records from a visit with a neurologist (*id*. at 74), COVID testing (*id*. at 75), MRI brain imaging (*id*. at 75), and numerous follow-up appointments. (*Id*. at 74–75.) Considering all this information, the ALJ concluded that Wahlert retained the residual functional capacity to perform sedentary work with some enumerated exceptions.[4] (*Id*. at 75.) Collectively, this body of medical information amounts to substantial evidence. Accordingly, Wahlert's objection to the R&R on this basis is overruled.

**B. Waiver Due to a Failure to Raise at the "Administrative Level" and Substantial Evidence for Wahlert's Fatigue, Balance Issues, and Use of Her Upper Extremities**

Wahlert contends that the magistrate judge "improperly rel[ied] on waiver" to dismiss her claims related to "fatigue, balance, and use of her upper extremities." (Doc. No. 10, at 3.) Wahlert further contends that "[t]he R&R's finding that any issue not raised at the administrative level could not be raised before this Court . . . was legally incorrect and taints the entire finding of the R&R[,] necessitating a remand of this matter." (*Id*.) In the R&R, the magistrate judge stated that Wahlert's "brief . . . submitted to the Appeals Council . . . didn't challenge the ALJ's treatment of Wahlert's fatigue, her ability to balance, or the use of her upper extremities. So Wahlert's arguments about these issues are not preserved." (Doc. No. 9, at 34 (citation omitted).)

The Court need not address whether the magistrate judge applied the correct legal standard for preserving issues for judicial review because the magistrate judge also reached the merits of the ALJ's treatment of each of the three challenged symptoms. (*See id*. at 36.) For Wahlert's

---

[4] Wahlert's assertion that the "ALJ adopted the opinion of the State Agency reviewing physicians who adopted the RFC from the prior ALJ" (Doc. No. 10, at 2) can quickly be refuted simply by comparing the enumerated exceptions listed within the prior RFC and the current RFC. The earlier RFC contained the following restriction on driving, "[Wahlert] should avoid concentrated exposure to operating a motor vehicle[.]" (Doc. No. 5, at 127.) Conversely, the present RFC has the more expansive requirement that Wahlert "should perform no commercial driving." (*Id*. at 72–73.) The ALJ also explained her rationale for expanding this driving restriction. (*Id*. 76–77.)

arguments related to her fatigue and use of her upper extremities, the R&R discussed the ALJ's treatment of those symptoms at length. (*See id*. at 34–36.) As for Wahlert's lack of balance, the R&R found those arguments to be "undeveloped and perfunctory, and thus, forfeited."[5] (*Id*. at 34.) For the reasons discussed below, the Court agrees with the magistrate judge that, regardless of any waiver, substantial evidence supported the ALJ's findings related to Wahlert's symptoms. Accordingly, Wahlert's objection to the magistrate judge's finding of waiver is overruled as moot.

Although not entirely clear, Wahlert seems to object to the R&R because, in her estimation, there was not substantial evidence to support the ALJ's original findings related to her symptoms of fatigue, loss of balance, and difficulties using her upper extremities. Specifically, Wahlert contends that "the R&R incorrectly found that the ALJ properly addressed [p]laintiff's fatigue, loss of balance, and difficulties using her upper extremities[]" before describing why these symptoms should have led the ALJ and magistrate judge to a different outcome. (*Id*. at 3–4.)

Having reviewed the R&R and the ALJ's decision, the Court finds that the ALJ did address each of these three symptoms. The ALJ addressed Wahlert's fatigue as it relates to her vision (Doc. No. 5, at 73) and listed her fatigue as a reason she found that Wahlert should not engage in commercial driving. (*Id*. at 75–76.) As for use of her upper extremities, which Wahlert fails to define in her objections (*see* Doc. No. 10, at 4–5), the ALJ described tasks that Wahlert was able to complete with her hands, wrists, and fingers. (*See* Doc. No. 5, at 71–72.) This included making crafts, painting, taking her children to school, taking care of the family dog, doing laundry, and performing light cleaning tasks. (*Id*. at 73.) Additionally, the ALJ described Wahlert's "'really

---

[5] Wahlert did not object to the magistrate judge's finding that her arguments related to her lack of balance were perfunctory and, thus, forfeited. Failure to object to a portion of an R&R forfeits any right to *de novo* review of the same. *See Thomas v. Arn*, 474 U.S. 140, 149–50, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

bad' muscle spasms that reduce dexterity in the hands." (*Id*.) Finally, concerning Wahlert's balance, the ALJ noted that relapsing and remitting MS comes with "balance issues" and that at one of her telehealth appointments there was "no significant change in function" to her balance or gait from the prior appointment. (*Id*.) Thus, contrary to any objection, the ALJ did address Wahlert's fatigue, loss of balance, and difficulties using her upper extremities but, relying on substantial evidence, denied her second application.[6] Accordingly, Wahlert's objection to the R&R on this basis is overruled.

## IV.    CONCLUSION

For the reasons discussed above, Wahlert's objections to the R&R are OVERRULED. (Doc. No. 10.) The R&R is ACCEPTED. (Doc. No. 9.) Because the Commissioner's decision to deny DIB is supported by substantial evidence, that decision is AFFIRMED, and this case is DISMISSED.

**IT IS SO ORDERED**.

Dated: July 10, 2023

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**

---

[6] As a final point, Wahlert's assertion that the ALJ "did not discuss how the [MS] symptoms would wax and wane" is not true. In her written decision, the ALJ stated that "[t]here are good and bad days[]" for the potency of Wahlert's MS symptoms. (Doc. No. 5, at 73.) The ALJ also described relapses and improvements in Wahlert's MS symptoms. (*Id*. at 75.) And, finally, the ALJ's decision rationale directly recants that Wahlert "was advised that MS symptoms wax and wane." (*Id*.)